UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DURAN, | Case No. CV 15-2801-PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance benefits ("DIB"). He claims that the Administrative Law Judge ("ALJ") erred when he rejected the opinion of the agreed medical examiner in Plaintiff's worker's compensation case. For the following reasons, the Court concludes the ALJ erred and remands the case to the Agency for further proceedings.

## II. SUMMARY OF PROCEEDINGS

In March 2012, Plaintiff applied for DIB, alleging that he had been disabled since February 2010, due to herniated discs, carpal tunnel syndrome, hypertension, and foot and hip problems.

(Administrative Record ("AR") 96, 110.)  The Agency denied his application initially and on reconsideration.  Plaintiff then requested and was granted a hearing before an ALJ.  In June 2013, he appeared with counsel at the hearing.  (AR 57-75.)  In August 2013, the ALJ issued a decision denying benefits.  (AR 13-20.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-8.)  He then commenced the instant action.

## III.  ANALYSIS

A.   The Agreed Medical Examiner's Opinion

In February 2010, Plaintiff was injured after his truck was rear-ended.  (AR 357.)  In May 2011, he was examined by orthopedic surgeon Israel Rottermann, the agreed medical examiner in Plaintiff's workers' compensation case.  (AR 356-68.)  Dr. Rottermann noted Plaintiff's complaints of pain and observed that he was wearing a knee brace.  (AR 356, 360.)  X-rays taken at the time of the examination showed some bone spur formation in Plaintiff's cervical spine and AC joint, narrowing of the L5-S1 disc, and degenerative changes of the knee.  (AR 363-64.)  Dr. Rottermann diagnosed a history of lumbar, cervical, and shoulder strain; bilateral knee complaints with torn meniscus; improving bursitis of the hip; and tendinitis of the left elbow.  (AR 366.)  He recommended that additional MRIs be taken and, if indicated, that surgery be performed on Plaintiff's shoulders and knees.  (AR 366-67.)

Six months later, in November 2011, Dr. Rottermann examined Plaintiff again.  (AR 345-50.)  Plaintiff reported that he continued to experience pain, headaches, and depression.  (AR 345-46.)  MRIs taken in September 2011 revealed rotator cuff tendinopathy and a partial tear of the ACL in both knees; an EMG and nerve conduction

study from that month showed L5 radiculopathy. (AR 346, 348.) Dr. Rottermann recommended pain management and epidural injections for Plaintiff's spine and cortisone injections for his shoulders. (AR 349.)

In March 2012, Dr. Rottermann examined Plaintiff a third time. (AR 333-39.) He noted that treating surgeon Dr. Rick Pospisil had recommended a knee arthroscopy and that Plaintiff had undergone additional MRIs and EMGs that showed the presence of carpal tunnel syndrome. (AR 334.) Dr. Rottermann recommended continuing pain management, including epidurals, bilateral knee surgery, and carpal tunnel release. (AR 337.)

In August 2012, internist Rocely Ella-Tamayo examined Plaintiff. (AR 257-61.) She did not review any of his medical records. (AR 257.) Dr. Ella-Tamayo noted that Plaintiff was "very rude and very irritable during the evaluation." (AR 257.) She found that his gait was slow but normal and observed that he did not use an assistive device to ambulate. (AR 260.) She reported that Plaintiff alleged that it was painful to flex his back and wrist and move his knees and seemed to have difficulty in getting on and off the examination table. (AR 260-61.) Although she did not make a finding about Plaintiff's credibility, she evidently did not believe him as she did not credit any of his complaints. She found that he could lift and carry up to 50 pounds occasionally and 25 pounds frequently, could stand and walk for up to six hours in an eight-hour workday, and would have no other functional limitations. (AR 261.)

In December 2012, Dr. Rottermann saw Plaintiff for an "orthopedic agreed medical reevaluation." (AR 276-88.) Plaintiff complained of anxiety, high blood pressure, stomach problems, and pain in his spine

(that was aggravated by activity), stomach, knees, and hips. (AR 277.) Dr. Rottermann noted that Plaintiff had elected not to have surgery because of concerns about his heart.[1] (AR 278.) He found that Plaintiff had tenderness, tightness, and discomfort in his cervical spine and a limited range of motion in his cervical spine, shoulders, and lumbar spine. (AR 280-81.) He also found that Plaintiff's wrists and hands were positive for Phalen's test, indicating that he had carpal tunnel syndrome. (AR 280.)

Dr. Rottermann concluded that Plaintiff would not be able to return to his past work as a driver and would be restricted to "semi-sedentary type work," with no prolonged standing or walking; no "heavy lifting," squatting, or overhead activities; and no repetitive bending, stooping, turning, tilting of the head and neck, power gripping, or grasping.[2] (AR 286.)

The ALJ did not adopt the limitations found by Dr. Rottermann but, instead, accorded the "most" weight to the opinion of Dr. Ella-Tamayo. (AR 18.) Accordingly, the ALJ determined that Plaintiff could perform a full range of medium work without limitation, including his past work as a truck driver. (AR 17, 19.) Plaintiff takes exception to this finding.

---

[1] In February 2012, Dr. Pospisil noted that Plaintiff had unstable blood pressure and, thus, required authorization to see a cardiologist before undergoing surgery. (AR 152.)

[2] Plaintiff observes that the Workers Compensation term "semi-sedentary" means that an individual is restricted to working no more than 50% of the time in a standing or walking position, "with a minimum of demands for physical effort whether standing, walking, or sitting." (Joint Stip. at 9 n.6, citing *Vasque v. Barnhart*, 2002 WL 1880743, at *7 (N.D. Cal. Aug. 13, 2002).)

4

It is the province of the ALJ to resolve conflicts in the medical evidence. *Andrews v Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). There are three types of doctors that supply that evidence: treating doctors, examining doctors, and reviewing doctors. All things being equal, treating doctors' opinions are entitled to the most weight because they are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041. Examining doctors are next on the list, followed by reviewing doctors. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830.

The ALJ adopted Dr. Ella-Tamayo's opinion on the ground that it was consistent with the "overall objective medical signs and laboratory findings of a longitudinal nature[.]" (AR 18.) The ALJ found that the evidence indicated Plaintiff's condition had improved between May 2011 and the date of decision, contrary to Dr. Rottermann's December 2012 opinion. (AR 16-19.) The ALJ also found that "the various Worker's Compensation 'disability' assessments and forms all lack estimation of onset and careful detail to the most recent laboratory and test results and findings[] to satisfy the durational requirements" for a disability finding. (AR 18.) For the following reasons, the Court concludes that the ALJ erred in doing so.

As an initial matter, the Court notes the state agency reviewer's assessment that Plaintiff's case was "very difficult . . . in that the bulk of the retrospective record consists of conflicting medical legal assessments and conflicting imaging studies." (AR 269.) In the run-of-the-mill case presenting conflicting evidence, an ALJ is entitled

to rely on an examining doctor's opinion that is based on independent clinical findings, such as that of Dr. Ella-Tamayo. *See Andrews*, 53 F.3d at 1041. The Court concludes here, however, that the ALJ's rationale for relying on the consulting examiner's opinion was flawed and mandates reversal.

First, all things being equal, the ALJ should have given more weight to Dr. Rottermann's opinion, not Dr. Ella-Tamayo's. Dr. Rottermann examined Plaintiff on four occasions over 19 months and thus had more familiarity with the longitudinal record than Dr. Ella-Tamayo, who examined Plaintiff once. Furthermore, Dr. Rottermann is an orthopedic surgeon, which presumably is the relevant specialty for Plaintiff's spine, shoulder, elbow, and knee complaints, whereas Dr. Ella-Tamayo is an internist. Moreover, Dr. Ella-Tamayo did not review any of Plaintiff's prior medical records and did not articulate any basis for dismissing Plaintiff's complaints of pain and limitation.

Further, the ALJ's reasons for rejecting Dr. Rottermann's opinion do not stand up to scrutiny. The ALJ questioned Dr. Rottermann's opinion based on the fact that his "assessments and forms all lack estimation of onset and careful detail to the most recent laboratory and test results and findings[.]" (AR 18.) This was error. The regulations do not require that a medical opinion include estimation of onset to be considered valid. Even if they did, Dr. Rottermann's May 2011 initial evaluation appears to contain both an estimation of onset and references to then-current EMG, nerve conduction, MRI, and X-ray results. (AR 357, 363-66.) In contrast, Dr. Ella-Tamayo's opinion, which the ALJ did rely on, did not address the date of onset or reference laboratory or test results. Assuming arguendo that Dr. Rottermann's opinion failed to address the date of onset and

overlooked recent test results, it was error for the ALJ to reject his opinion on grounds that apply equally, if not more so, to the examining internist's opinion, which he did adopt.  If the ALJ finds it appropriate to discount medical opinions that lack consideration of the onset date and fail to reference laboratory tests, he must apply the rule to all similarly situated doctors in the case.

   The ALJ found that Plaintiff's injuries from his accident had improved based in part on his finding that the "DDS physicians" had opined that they had.  (AR 17, 19.)  In fact, it was not a physician, but an agency analyst who reached that conclusion.  (AR 269-70.)  The ALJ's reliance on the analyst's opinion was in error.  Furthermore, although the ALJ correctly pointed to signs of medical improvement in the record, such as a June 2011 examination by Dr. Aaron Coppelson--who provided an electrodiagnostic consultation and found no focal paresthesias or significant gait dysfunction (AR 473)--he neglected to address other evidence that tended to show that there was less improvement, such as reports from pain management specialist Nabil Dahi.  Dr. Dahi examined Plaintiff in June, July, and November 2011, finding on each occasion that Plaintiff had limited range of motion and tenderness in his spine.  (AR 212-13, 219, 232-33.)  The ALJ's failure to address the evidence that undermined his decision was error.  *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding ALJ's rejection of doctor's opinion not supported by substantial evidence where ALJ selectively relied on records indicating improvement and ignored others that showed "continued,

severe impairment"). For these reasons, the case is remanded for further consideration.³

## IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded for further consideration consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

Dated: September 13, 2016.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\DURAN, R 2801\memo opinion and order.wpd

---

³ Plaintiff has requested that the case be remanded for an award of benefits. The Court recognizes that it has the authority to do so but finds that such relief is not warranted because it is not clear that Plaintiff is disabled. See Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").